IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>BRYCE A. NOLDE,<br><br>    Defendant. | **8:24-CR-23**<br><br><br>**MEMORANDUM AND ORDER ON<br>MOTIONS IN LIMINE** |

This matter is before the Court with respect to two motions in limine, one filed by the Government, and one filed by the defendant, Bryce A. Nolde. The Government's motion in limine seeks an order precluding the defendant from offering evidence of or argument pertaining to five different topics. Filing 137. The defendant has responded to the Government's motion in limine. Filing 143; Filing 144. The defendant's motion in limine, Filing 139, seeks to exclude Rule 404(b) evidence first identified in the Government's Notice of Intent to Offer Rule 404(b) Evidence, Filing 135. The Government has responded to the defendant's motion in limine and has filed a Supplemental Notice of Intent to Introduce Rule 404(b) Evidence. Filing 145; Filing 146. For the reasons below, the Government's motion in limine is granted in part and denied in part, and the defendant's motion in limine is denied.

## I.  BACKGROUND

The Court outlined the background of this case in great detail in a prior order addressing six motions to dismiss filed by the defendant. Filing 164. Here, the Court sets forth only the pertinent facts. The defendant is the president and registered agent of BV Builders, LLC, (BV Builders) a

1

Nebraska-based construction company specializing in the construction of "barndominiums" and "shouses." He has been charged with three counts of wire fraud affecting a financial institution in violation of 18 U.S.C. § 1343 for allegedly engaging in a scheme to defraud the customers, subcontractors, and suppliers of BV Builders. The charging documents assert that the defendant through BV Builders solicited customers seeking barndominiums or shouses, accepted payments from the customers and drew funds from the customers' construction loans at financial institutions while representing that the funds would be used to pay subcontractors and suppliers working on the customers' construction projects, and did not pay the subcontractors and suppliers with those funds. According to the charging documents, this led subcontractors, suppliers, and even BV Builders itself to place construction liens on the customers' projects. The Superseding Indictment identifies three victims—Victims 1 and 2, a married couple, and Victim 4—and three financial institutions—Financial Institution 1, Financial Institution 2, and Financial Institution 3. *See* Filing 98. This matter is set for trial on January 26, 2026, and the parties have filed their motions in limine in anticipation of trial.

## II. LEGAL ANALYSIS

### A. The Government's Motion in Limine (Filing 137)

The Court begins with the Government's motion in limine. Filing 137. The Government seeks an order precluding the defendant from offering the following at trial:

> 1. Any arguments or commentary before the jury about "outrageous conduct" by the Government and its actors including any personal anecdotes or opinions that the government and/or legal system is corrupt, overreaching, or conspiring against the Defendant. Including any argument that the Government and law enforcement violated Nolde's rights or has treated Nolde unfairly during the proceedings of this case and/or investigation including the search of his residence.

2

2. Any commentary, argument, or opinion about the actions of the Nebraska Attorney General's Office or other prosecuting bodies including the fact that there are currently no criminal charges from these other bodies.

3. Any argument or personal opinions that Nolde's case should be handled in civil proceedings instead of criminal proceedings.

4. Any argument First Community Bank committed "forgery" by copying and pasting Nolde's signature on internal documentation.

5. Any argument or evidence concerning Uniform Commercial Code Law, Nebraska State Law, and Civil laws.

Filing 137 at 1–2. The Court will address each subpart in turn but notes that the Government's overarching position is that any argument, evidence, commentary, or opinion falling within the five identified areas would be irrelevant or, if relevant, its probative value would be substantially outweighed by any number of potential harms.

Under the Federal Rules of Evidence, only relevant evidence is admissible. Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). Evidence is relevant if two requirements are met: (1) the evidence "has any tendency to make a fact more or less probable than it would be without the evidence" and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also United States v. Richardson*, 40 F.4th 858, 867 (8th Cir. 2022) ("Only relevant evidence is admissible, Fed. R. Evid. 402, and relevant evidence is evidence having 'any tendency to make a fact more or less probable than it would be without the evidence' so long as 'the fact is of consequence in determining the action,' Fed. R. Evid. 401."). However, just because evidence is relevant does not mean it must be admitted. Rule 403 of the Federal Rules of Evidence provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. With these

3

standards in mind, the Court turns to the five subparts identified in the Government's motion in limine.

### 1. *The First Subpart*

The Court first considers the Government's request to preclude the defendant from arguing or commenting on "'outrageous conduct' by the Government and its actors." Filing 137 at 1. The Government bases this request generally on the arguments set forth in the defendant's six motions to dismiss and specifically on the arguments in Motion 2 (Filing 112) and the accompanying brief (Filing 113). Filing 138 at 9. Motion 2 sought dismissal of the indictments for "violations of Nolde's rights under the 5th and 6th Amendments to the United States Constitution; violation of attorney-client privilege; [and] violations of the Brady rule." Filing 112 at 10. The Government characterizes the defendant's arguments supporting Motion 2 as "inflammatory allegations and arguments" that should not be permitted at trial. Filing 137 at 9–10. The Government is particularly concerned with the defendant's previous "attempt[s] to argue that the investigating officers have engaged in 'outrageous conduct' by allegedly viewing materials prior to the filter review process being complete," his allegations of investigators "'raiding' his house with 35 officers during the 'predawn' search," his assertions that "the Government is conspiring against him including [in the form of] alleged verbal abuse by the Nebraska Attorney General Mike Hilgers," and his attorney's "accusations . . . that the Government is overreaching and is personally out to get Nolde." Filing 138 at 10. The Government contends that these arguments are not relevant "to the issues of innocent [sic] or guilt at trial" and that they are more appropriately resolved in pretrial litigation. Filing 138 at 11. The Government further maintains that the arguments are "incorrect" and, if the defendant were to present them at trial, carry "a *substantial* risk that a jury of lay people would be misled and

confused about the ultimate issues of Nolde's guilt or innocence of the crimes charged." Filing 138 at 11–12 (emphasis in the original).

For his part, the defendant does not dispute the Government's request to preclude him from arguing or commenting on "outrageous conduct" because he "believe[s] such issues are issues for the Court to decide." Filing 143 at 1. Because it is unopposed, the Government's motion in limine is granted as to the first subpart. The defendant is precluded from offering "[a]ny arguments or commentary before the jury about 'outrageous conduct' by the Government and its actors including any personal anecdotes or opinions that the government and/or legal system is corrupt, overreaching, or conspiring against the Defendant." Filing 137 at 1. This includes "any argument that the Government and law enforcement violated Nolde's rights or has treated Nolde unfairly during the proceedings of this case and/or investigation including the search of his residence." Filing 137 at 1.

The Court would have granted the Government's first request even if the defendant had opposed it. The defendant's six motions to dismiss asserted, among other things, that the defendant's constitutional rights had been violated on various grounds. The Court addressed those claims in detail and also considered specifically whether there had been any outrageous government conduct supporting a violation of the defendant's due process rights. The Court concluded that no constitutional violations had occurred and denied the defendant's motions to dismiss. *See* Filing 164. Because the Court has already considered at length the defendant's allegations of outrageous government conduct and violations of his rights, those issues are of no consequence to the determinations to be made at trial, namely, the determination of guilt or innocence. *See* Fed. R. Evid. 401 ("Evidence is relevant if . . . the fact is of consequence in determining the action.").

Accordingly, the Government's motion in limine is granted as to the first subpart.

5

2. *The Second Subpart*

Next, the Court reviews the Government's request to preclude the defendant from making "[a]ny commentary, argument, or opinion about the actions of the Nebraska Attorney General's Office or other prosecuting bodies including the fact that there are currently no criminal charges from these other bodies." Filing 137 at 1. The Government notes that Motion 2 of the defendant's motions to dismiss "allude[d] to the fact that a complaint concerning Nolde's actions was first brought to the attention of the Nebraska Attorney General's office, but that it was later transferred to the United States Attorney's Office." Filing 138 at 13. The Government anticipates "that Nolde will argue he should be acquitted of the crime charged because the Nebraska Attorney General's office has not charged him" and asks the Court to prevent the defendant from making that argument or "[e]liciting testimony or otherwise commenting that other prosecuting offices were aware of Nolde's conduct and chose not to charge him." Filing 138 at 14. The Government argues that "[t]his line of questioning or commentary involves pure speculation" because "the witnesses who will testify at trial will not include prosecutors from other offices who would have made the decision on whether to prosecute Nolde" and is therefore inadmissible under Federal Rule of Evidence 602. Filing 138 at 14. The defendant does not dispute the Government's second request because "such issues do not directly deal with the charges against the defendant." Filing 143 at 1. Accordingly, the Government's motion in limine is granted as to the second subpart and the defendant will not be permitted to argue, comment on, or elicit testimony regarding the charging decisions of any other prosecuting body.

3. *The Third Subpart*

The Court now turns to the Government's request that the Court prevent the defendant from presenting "[a]ny argument or personal opinions" that his case "should be handled in civil

6

proceedings instead of criminal proceedings." Filing 137 at 1. Much like its two prior subparts, the Government bases the third subpart of its motion in limine on arguments first raised in the defendant's motions to dismiss. Filing 138 at 16. The Government identifies three of those motions—Motion 3 (Filing 120), Motion 4 (Filing 122), and Motion 5 (Filing 124)—and explains that in all three motions and supporting briefs, the defendant argued that "this case represents civil breach of contract issues and nothing more, thus requesting dismissal." Filing 138 at 16. The Government anticipates that the defendant "will continue to push this narrative at trial" because he is "currently engaged in civil litigation with several of the victims in this case." Filing 138 at 16. The Government contends that this argument—that "the facts of this case would be best left to civil litigation"—carries "little relevance" and risks "misleading the issues and confusing the jury." Filing 138 at 16–17.

In response, the defendant states that he "must be permitted to argue that this case is fundamentally a civil matter due to Nolde's lack of fraudulent intent." Filing 144 at 2. The defendant points out that one of the elements the Government must prove beyond a reasonable doubt to secure conviction under the wire fraud statute is that "the defendant intended to defraud." Filing 144 at 4; *see also United States v. Thomas*, 791 F.3d 889, 893 (8th Cir. 2015) ("Securing a conviction for wire fraud requires the government to prove that: (1) the defendant devised or joined a scheme to defraud, (2) the defendant intended to defraud, (3) it was reasonably foreseeable that interstate wire communications would be used, and (4) wire communications were, in fact, used."). According to the defendant, his "characterization of this case as a civil matter directly challenges the 'intent to defraud' element of wire fraud" because "[w]ithout fraudulent intent, a breach of contract or business failure does not rise to the level of criminal fraud." Filing 144 at 5. The defendant argues that if he "lacked the intent to deprive others of their property rights, his conduct falls outside the

7

scope of criminal wire fraud," and preventing him from making this argument would "improperly limit [his] ability to contest an essential element of the crime and would prejudice his right to a fair trial." Filing 144 at 6–7.

The Court considers two aspects of the defendant's proposed "civil case" argument: the existence of actual civil litigation and the civil matter characterization. The Court starts with the existence of actual civil litigation. From its review of the record, the Court is aware that the defendant is or at one time was a party to multiple civil cases filed in various state courts. In some cases, the defendant is a civil plaintiff. In others, he is a civil defendant. All of the cases involve or are otherwise related to the events underlying this criminal matter. Turning to the defendant's desire to characterize this criminal case as a civil matter, the Court understands that the existence of these civil cases—particularly the cases in which victims of the alleged scheme to defraud have sued the defendant and BV Builders under their construction contracts, *see* Filing 38 (Audio File)—likely inspired the civil matter characterization that the defendant seeks to present at trial. It is not clear whether the defendant intends to refer specifically to any of the civil lawsuits in making his civil matter characterization or whether he intends to argue generally that this "situation" is "more appropriately handled as a civil matter." Filing 144 at 6. The distinction ultimately does not matter. The defendant will be precluded from offering evidence or argument of both.

Regarding the civil matter characterization, the defendant is precluded from arguing or eliciting testimony that this should have been a civil matter instead of a criminal prosecution. The defendant contends that such argument or evidence "has substantial probative value" and is "highly relevant" to his defense and to the "central issue" of whether he possessed the intent to defraud. Filing 144 at 6. The Court disagrees. It is not relevant that the underlying facts of this criminal case could potentially support a civil breach of contract claim. *See* Fed. R. Evid. 401 and 402.

8

Furthermore, any probative value that the civil matter characterization could have is substantially outweighed by the danger of confusing the issues and misleading the jury. Fed. R. Evid. 403. The issue in this case is whether the Government has proven beyond a reasonable doubt the elements of wire fraud affecting a financial institution, and neither civil law generally nor contract law specifically plays any role in determining whether the Government has met that burden. Contrary to the defendant's assertion, he will still be able to challenge the intent to defraud element even though he cannot characterize this case as a civil matter. Nothing prevents the defendant from arguing that he "had no intent to defraud but rather intended to pay the subcontractors and suppliers before his business became insolvent." Filing 144 at 5. There is also nothing stopping the defendant from contending that his conduct was not criminal conduct because he lacked the requisite intent. He cannot, however, go so far as to suggest that this case should not have been a criminal prosecution. *See e.g.*, *United States v. Worman*, No. 2:23-cr-00136-DCN-1, 2024 WL 3639220, at *6 (D. Idaho Aug. 1, 2024) ("[The defendant] may not present evidence or argument to suggest that because a victim may have pursued civil remedies from [the defendant] under the Repayment Agreement, his criminal prosecution is improper. [The defendant] may not suggest that contract law applies to the charges here, or that this case should be a civil matter because it involves a potential breach of contract."); *United States v. Anderson-Trahan*, No. 22-2, 2022 WL 16758571, at *4 (E.D. La. Nov. 8, 2022) ("Defendant may not argue that the jury should acquit her because the government should have pursued civil [ ] audit or collection activities rather than prosecuting her criminally."); *United States v. Chen*, No. 17-cr-00603-BLF-1, 2021 WL 2662116, at *5 (N.D. Cal. June 29, 2021) ("[T]he Court finds it improper to argue that this should have been a civil case, not a criminal prosecution. The Court finds that arguing that this should have been a civil matter is essentially arguing for nullification."); *United States v. Stegman*, No. 14-20109-JAR, 2016 WL 845256, at *1

9

(D. Kan. Mar. 3, 2016) ("Defendants may not introduce testimony that this case should have been brought as a civil, rather than criminal, proceeding.").

To the extent the defendant intends to specifically reference any of the civil lawsuits at trial, he is also precluded from doing so. Although the civil lawsuits are related to the facts of this criminal case, they are not relevant. Like the civil matter characterization, the civil lawsuits themselves do not have any tendency to make the defendant's guilt or innocence more or less probable, and they are of no consequence in determining whether the Government has met its burden to prove the elements of the charged wire fraud offenses. *See* Fed. R. Evid. 401 and 402. The defendant is therefore precluded from referencing any of the civil lawsuits—whether ongoing or resolved and whether he is the civil plaintiff or the civil defendant. Even if the civil lawsuits were relevant to this criminal case, the Court concludes that any probative value would be substantially outweighed by the dangers of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403.

For reasons stated above, the Government's motion in limine as granted as to the third subpart.

### 4. *The Fourth Subpart*

The Government's fourth request is that the defendant be precluded from making "[a]ny argument First Community Bank committed 'forgery' by copying and pasting Nolde's signature on internal documentation." Filing 137 at 2. As the grounds for this subpart, the Government points to the defendant's arguments supporting Motion 3 of his motions to dismiss. Filing 138 at 17. The Government asserts that the defendant used the word "forgery" to describe First Community Bank's "actions in copying and pasting his signature on their own internal documentation to authorize funds be released to Nolde." Filing 138 at 17. The Government argues that "the use of the word 'forgery'" is "not only prejudicial, but also inaccurate" because "forgery" under the Model Penal Code requires

10

"a purpose to defraud or injure and knowledge that the actor is facilitating fraud or injury" and here, there is no "information to suggest" that First Community Bank acted to defraud either its clients or the defendant. Filing 138 at 17–18. The Government further contends that the defendant's "purported defense that the bank committed forgery" is irrelevant because "[e]ven if the bank copied and pasted Nolde's signature on these documents, it does nothing to negate *Nolde's* fraudulent actions." Filing 138 at 18 (emphasis in the original).

The defendant responds that he "should be able to argue that the bank's fraudulent actions were the problem and not Nolde's actions as it goes directly to the issuance of the check alleged as wire fraud under Count I." Filing 143 at 1. More specifically, the defendant claims that he "made a draw request to Community State Bank. Community State Bank then utilized a prior signature of Nolde to request the Title Company to issue the check to BV Builders. On the form with Nolde's signature, there was a statement that all the subcontractors and suppliers were paid." Filing 144 at 9. According to the defendant, this supports that "it was the bank, not Nolde, who issued a false statement utilizing an unauthorized signature of Nolde to request the check by [sic] drafted by the Title Company." Filing 144 at 9. The defendant's proposed defense appears to be that "[i]f the bank, not Nolde, was responsible for the fraudulent representation through unauthorized use of his signature, this undermines the government's claim that Nolde participated in any scheme to defraud." Filing 144 at 9. The defendant argues that this defense challenges the scheme to defraud and intent to defraud elements of the wire fraud statute and that it "may establish that the bank's actions constitute an intervening cause that relieves Nolde of criminal liability." Filing 144 at 8–9.

The Court notes a few things at the outset. First, the parties refer to different financial institutions in their briefs but it is clear that they are both referencing the financial institution named in Count I, Financial Institution 1. Second, and contrary to the Government's assertion, the word

11

"forgery" does not appear anywhere in Motion 3 or the supporting brief. *See generally* Filing 120; Filing 121. The defendant does assert in Motion 3 that the "action of the bank in fraudulently using Nolde's signature constitutes fraud on the part of the bank." Filing 120 at 3. As the Court understands it, this assertion by the defendant is the argument that the Government seeks to limit at trial. The Court will grant the Government's motion in limine as to subpart four, but only to the extent that the defendant is precluded from accusing any financial institution of committing fraud, forgery, or some other crime because this risks confusing the issues and misleading the jury. Fed. R. Evid. 403. The defendant will of course be permitted to argue that the Government has not met its burden of proof on the elements of the charged wire fraud offenses, including the elements of a scheme to defraud and intent to defraud, and he may do so by eliciting testimony or presenting evidence of "copied and pasted" signatures or unauthorized signatures, so long as that evidence is otherwise admissible. However, the defendant cannot cross the line into accusing a financial institution of committing fraud or forgery.

Accordingly, to the extent the fourth subpart of the Government's motion in limine seeks to preclude the defendant from accusing Financial Institution 1 of committing a crime, that motion is granted as to all financial institutions named in the charging documents. To the extent the fourth subpart seeks a broad limit on evidence of Financial Institution 1's actions regarding loan draws, that motion is denied.

### 5. *The Fifth Subpart*

Finally, the Court considers the fifth subpart of the Government's motion in limine. In that subpart, the Government asks the Court to preclude "[a]ny argument or evidence concerning Uniform Commercial Code Law, Nebraska State Law, and Civil laws." Filing 137 at 2. The Government argues that it is "the Court's sole responsibility to instruct the jury on the law" and that

reference to any of these laws "would have minimal if any relevance to the ultimate issues before the jury," "would be outweighed by the risk of prejudice to the Government," and would likely "influenc[e] the jury to not follow the *criminal law* they are required to for trial." Filing 138 at 19 (emphasis in the original). The defendant does not object to the fifth subpart and instead "concedes to Paragraph 5 of the Government's Motion in Limine and acknowledges that [he] will only argue the law as submitted to the jury in the court's instructions." Filing 144 at 11.

The Court therefore grants the Government's motion in limine as to the fifth subpart. Because the defendant is charged with violating federal law, arguments concerning state law are irrelevant.

**B.  The Defendant's Motion in Limine (Filing 139)**

Having addressed the Government's motion in limine, the Court now turns to the Defendant's motion in limine. Filing 139. The defendant seeks an order excluding Rule 404(b) evidence. Filing 139 at 1.

*1.  The Parties' Arguments*

On December 21, 2025, the Government filed a Notice of Intent to Introduce Rule 404(b) Evidence, Filing 135, and an accompanying brief, Filing 136. The Government's notice states that although the defendant has been charged with three counts of wire fraud affecting a financial institution, "[a]pproximately 20 client projects/victims have been identified as BV Builders' clients who suffered losses due to the same general scheme and artifice to defraud as the charged conduct all within the same approximate timeframe." Filing 135 at 1. The notice declares the Government's intent to introduce evidence of "three to four additional clients who were victimized" by way of witness testimony and exhibits. Filing 135 at 1–2. The notice does not identify those "three to four additional clients." Both the Government's notice and its supporting brief assert that "it is the

13

Government's position this evidence is admissible as intrinsic evidence on its own right." Filing 135 at 1; Filing 136 at 8–9. The Government also argues that evidence of the three to four additional clients is admissible under Rule 404(b) of the Federal Rules of Evidence to show the defendant's "motive, opportunity, intent, knowledge, [ ] identity," and "absence of mistake or lack of accident." Filing 135 at 1–2.

On December 30, 2025, the defendant filed a motion in limine seeking to exclude the Rule 404(b) evidence identified in the Government's notice. Filing 139. The defendant's argument is multi-pronged. First, he argues that the Government's notice "is not sufficient and does not allow the Defendant the opportunity to prepare." Filing 139 at 1; Filing 140 at 1. Second, he contends that the proffered evidence in the Government's notice—"the unindicted conduct"—"is not sufficiently similar to the charged wire fraud offenses to be admissible under Rule 404(b)(2), particularly as the government has not alleged that the unindicted conduct involved wire fraud." Filing 140 at 1. Third, he asserts that "the evidence is not intrinsic to the charged offenses." Filing 140 at 1. And fourth, the defendant argues that the probative value of the Rule 404(b) evidence "is substantially outweighed by the danger of unfair prejudice under Rule 403." Filing 140 at 1.

On January 6, 2026, the Government filed both a response to the defendant's motion in limine, Filing 145, and a Supplemental Notice of Intent to Introduce Rule 404(b) Evidence, Filing 146. The Government's response echoes the arguments that the Government previously made in its brief accompanying its initial notice and emphasizes that its proffered evidence meets "the requirements for admission under 404(b)." Filing 145 at 3 (emphasis omitted). The Government's supplemental notice names the previously identified "three to four additional clients" and explains that the Government intends to "call[ ] people associated with the following BV Builder/Nolde customer projects: 1. The Lucas project, 2. The Gondringer project, 3. The Hula project, and 4. The

14

Lindow project." Filing 146 at 2. According to the supplemental notice, the Government anticipates calling the customers themselves, as well as "each subcontractor and supplier who was involved with these customer projects and ultimately owed money." Filing 146 at 2. The Government also states that it "anticipates that any subcontractor or supplier who testifies at trial will testify about all BV [Builders] projects for which they completed work and were not fully paid by Nolde and BV Builders." Filing 146 at 2.

### 2. Applicable Standards

Rule 404(b)(1) provides, "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). "This same evidence, however, 'may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" United States v. White, 816 F.3d 976, 982 (8th Cir. 2016) (quoting Fed. R. Evid. 404(b)(2)). Put differently, "a court may admit evidence of another wrong or act when it is relevant to any issue in the trial other than the defendant's criminal disposition." Thomas, 791 F.3d at 894. "When considering the admissibility of Rule 404(b) evidence for a permissible purpose, a court must determine that the evidence is relevant, is similar in kind and not too remote in time, is sufficiently supported by the evidence, and the potential prejudice does not substantially outweigh the probative value." Id. Pursuant to Rule 404(b)(3), the prosecutor in a criminal case must also "provide reasonable notice" of any Rule 404(b) evidence he seeks to offer at trial, "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose," and "do so in writing before trial." Fed. R. Evid. 404(b)(3).

15

However, Rule 404(b) "does not apply to evidence 'intrinsic' to the charged offense." *United States v. Guzman*, 926 F.3d 991, 999 (8th Cir. 2019) (quoting *United States v. Thomas*, 760 F.3d 879, 883–84 (8th Cir. 2014)). The Eighth Circuit has explained:

> "[I]ntrinsic evidence[ ] is evidence of wrongful conduct other than the conduct at issue offered for the purpose of providing the context in which the charged crime occurred." *United States v. Campbell*, 764 F.3d 880, 888 (8th Cir. 2014) (cleaned up). It "includes both evidence that is inextricably intertwined with the crime charged as well as evidence that merely 'completes the story' or provides context to the charged crime." *United States v. Young*, 753 F.3d 757, 770 (8th Cir. 2014). Intrinsic evidence need not be "*necessary* to the jury's understanding of the issues" to be admissible. *Id.* Of course, when admitting intrinsic evidence, "[t]he dictates of [R]ule 403 must still be applied to ensure that the probative value of this evidence is not outweighed by its prejudicial value." *United States v. Bass*, 794 F.2d 1305, 1312 (8th Cir. 1986). District courts have "broad discretion" in admitting intrinsic evidence and we will reverse "only if such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *Thomas*, 760 F.3d at 883 (quoting *United States v. Katz*, 445 F.3d 1023, 1029 (8th Cir. 2006)).

*Guzman*, 926 F.3d at 999–1000. "Intrinsic evidence may help to fill the gaps in the jury's understanding of the crime charged." *Young*, 753 F.3d at 770.

### 3. Intrinsic Evidence of the Alleged Scheme to Defraud is Admissible

Having reviewed the Government's proffered evidence and the parties' arguments, the Court concludes that the evidence of the additional BV Builders customers, as set forth in the Government's supplemental notice, is intrinsic evidence that is outside the scope of Rule 404(b). In *United States v. Hall*, the Eighth Circuit considered whether the district court properly admitted evidence of the defendant's involvement in a trust, the "Axiom Trust," when the charged offenses (including two counts of wire fraud) only concerned the defendant's involvement in a separate trust, the "Kingsley Trust." 604 F.3d 539, 540–43. The defendant in *Hall*, much like the defendant here, argued that the trusts were not inextricably intertwined because the trusts spanned different timeframes, existed in different locations, affected different victims, and involved different people.

16

*Id.* at 543. The Eighth Circuit disagreed, affirming the district court's conclusion that the two trusts were inextricably intertwined and that "evidence of the Axiom Trust was intrinsic to the indictment" because the defendant "registered the two trusts at the same time, at the same place, and with the same business address" and operated the trusts in the same manner, making "similar false representations to victims of each trust," keeping "his own name off the trusts' bank accounts and other documents," controlling "the trusts through conduits," and spending "investors' funds on personal expenses—without investing a dime." *Id.* at 543. The Eighth Circuit concluded that "the two trusts were integral parts of the same fraudulent scheme" and "[f]ailure to introduce evidence of the Axiom Trust might have created a gap in the jury's understanding." *Id.*

Here, evidence of the four projects identified in the Government's supplemental notice is intrinsic to the charged wire fraud offenses because although the four projects may involve "different victims, different transactions, and potentially different time periods," Filing 140 at 6, they are part of the "same fraudulent scheme" alleged in the charging documents, *Hall*, 604 F.3d at 543. The defendant argues that "the charged wire fraud offenses can be fully understood and proven without reference to the unindicted conduct," Filing 140 at 7, but intrinsic evidence does not need to be "'*necessary* to the jury's understanding of the issues' to be admissible." *Guzman*, 926 F.3d at 1000 (emphasis in the original) (quoting *Young*, 753 F.3d at 770). Instead, evidence of the four projects will serve to prevent any "gap[s] in the jury's understanding." *Hall*, 604 F.3d at 543. The Government explains that it "anticipates that any subcontractor or supplier who testifies at trial will testify about all BV [Builders] projects for which they completed work and were not fully paid by Nolde and BV Builders." Filing 146 at 2. The Court concludes that this anticipated evidence, like the evidence of the four identified projects, is "inextricably intertwined with the crime[s] charged" and further "provides context to the charged crime[s]." *Guzman*, 926 F.3d at 1000.

17

Finally, the Court concludes that the probative value of evidence of other BV Builders projects is not outweighed by any potential prejudice. *See* Fed. R. Evid. 403; *Guzman*, 926 F.3d at 1000 ("Of course, when admitting intrinsic evidence, '[t]he dictates of [R]ule 403 must still be applied to ensure that the probative value of this evidence is not outweighed by its prejudicial value.'"). Evidence of other BV Builders projects is probative of multiple wire fraud elements, including whether there was a scheme to defraud and whether the defendant possessed the requisite intent. And as the Court discusses below, evidence of other BV Builders projects is also probative of issues such as the defendant's motive, preparation, plan, knowledge, absence of mistake, and lack of accident.

Even if the Court did not believe that the Government's proffered evidence was intrinsic evidence, the Court would find that the evidence is "admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "Rule 404(b) is a rule of inclusion." *United States v. Crow Ghost*, 79 F.4th 927, 935 (8th Cir. 2023). Under that Rule, the evidence of other BV Builders projects should be included because such evidence, as proffered, is relevant to determining whether the Government has carried its burden to prove the elements of the charged wire fraud offenses beyond a reasonable doubt. *See United States v. Edelmann*, 458 F.3d 791, 809 (8th Cir. 2006) ("Rule 404(b) evidence is admissible if it is: 1) relevant to a material issue; 2) similar in kind and close in time to the crime charged; 3) proven by a preponderance of the evidence; and 4) if the potential prejudice does not substantially outweigh its probative value." (internal quotation marks and citation omitted)). The proffered evidence is also similar in kind and close in time to the conduct charged in the indictments. The Government asserts that the "additional victim-customers" were "subjected to the same scheme" as the customers identified in the indictments "during the same alleged period."

Filing 136 at 9. As the defendant acknowledges, the "unindicted conduct" in the Government's notices "involves alleged failures to pay subcontractors and suppliers and unfinished projects similar to those charged." Filing 140 at 2. The defendant later claims that the "unindicted conduct is not sufficiently similar to the charged wire fraud offenses," Filing 140 at 10, but to be admissible under Rule 404(b), "the prior acts need not be duplicates," *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006). The Court concludes that the other BV Builders projects, while not duplicates of the projects identified in the charging documents, are sufficiently similar in kind and close in time to be admissible under Rule 404(b).

The defendant has not argued that the proffered evidence cannot be proven by the preponderance of the evidence and the Court will not make such a finding at this time. *See generally* Filing 140. Moreover, the evidence of other BV Builders projects is probative on the questions of whether there was a scheme to defraud and whether the defendant possessed intent to defraud, as well as on the issues of motive, opportunity, plan, knowledge, identity, absence of mistake, and lack of accident. The potential prejudice of this evidence does not outweigh its probative value. Finally, regarding the issue of notice under Rule 404(b)(3), the Court concludes that the Government's supplemental notice resolves any concerns the defendant may have had with the sufficiency of the initial notice. *See Crow Ghost*, 79 F.4th at 934 ("Rule 404(b) imposes no specific time limits beyond requiring reasonable pretrial notice."). By naming the four additional BV Builders projects that the Government anticipates offering evidence of at trial and by doing so 20 days before trial, the supplemental notice is reasonable. *See id.* ("Factors a court is to consider when determining the reasonableness of notice are: (1) when, through timely trial preparation, the government could have learned of the evidence; (2) the prejudice to a defendant due to the lack of time to prepare; and (3) the significance of the evidence to the government's case."). Although the Government only recently

gave formal notice of its intent to discuss other BV Builders projects beyond those named in the indictments, the Government informed the defendant of the existence of additional alleged victims as early as June 24, 2024. *See* Filing 38. Because the Government's proffered evidence meets Rule 404(b)'s requirements, it is also admissible under that rule even if it is not intrinsic.

### III. CONCLUSION

For these reasons, the Government's motion in limine is granted in part and denied in part and the defendant's motion in limine is denied. Accordingly,

IT IS ORDERED:

1. The Government's Motion in Limine, Filing 137, is granted in part and denied in part as follows:

a. The first subpart is granted;

b. The second subpart is granted;

c. The third subpart is granted;

d. To the extent the fourth subpart seeks to preclude the defendant from accusing Financial Institution 1 of committing a crime, that subpart is granted as to all financial institutions named in the charging documents. To the extent the fourth subpart seeks a broad limit on evidence of Financial Institution 1's actions regarding loan draws, that motion is denied; and

e. The fifth subpart is granted.

2. The Defendant's Motion in Limine, Filing 139, is denied.

Dated this 16th day of January, 2026.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge