IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br><br>vs.<br><br><br>BRYCE A. NOLDE,<br>              Defendant. | **8:24-CR-23**<br><br><br><br>**MEMORANDUM AND ORDER ON THE DEFENDANT'S MOTION FOR NEW TRIAL** |

On February 4, 2026, following an eight-day trial, the jury found defendant Bryce A. Nolde guilty of three counts of wire fraud affecting a financial institution in violation of 18 U.S.C. § 1343. Filing 206. Nolde has now moved for a new trial pursuant to Federal Rule of Criminal Procedure 33. Filing 212. Nolde bases his Motion for New Trial on allegations of prosecutorial misconduct and asserts that during the rebuttal portion of closing arguments, counsel for the Government misrepresented evidence of Nolde's financial transactions, falsely stated that Nolde had traveled to Jamaica, called Nolde a liar, and mischaracterized the testimony of a trial witness. Filing 212 at 1; Filing 213 at 2–4. For the reasons below, Nolde's motion is denied.

## I.   BACKGROUND

Nearly two years before the trial in this matter, the grand jury returned an Indictment charging Nolde with one count of wire fraud affecting a financial institution and alleging that Nolde through his construction company, BV Builders, LLC (BV Builders), defrauded customers who had hired BV Builders to build "barndominiums" and "shouses." Filing 1. Following the Indictment, Nolde retained the first of his three defense attorneys and entered a plea of not guilty. Filing 7; Filing

17 (Text Minute Entry). Over the course of the next 23 months, Nolde's case was designated as complex and continued multiple times, often at defense counsel's request.[1] Trial was eventually set for November 10, 2025, but less than a month before that date, Nolde hired his third attorney and filed a motion to continue trial. Filing 88; Filing 91. After Nolde's new counsel entered his appearance but before the Court granted the motion to continue, the grand jury returned a Superseding Indictment charging Nolde with two additional counts of wire fraud affecting a financial institution. Filing 98. The Superseding Indictment alleged that Nolde through BV Builders solicited customers seeking barndominiums or shouses, accepted payments from the customers and drew funds from the customers' construction loans at financial institutions while representing that the funds would be used to pay subcontractors and suppliers working on the customers' construction projects, and did not pay the subcontractors and suppliers with those funds resulting in construction liens being filed against the customers' projects.

Following a hearing, the Court granted Nolde's motion to continue trial and set a new trial date of January 26, 2026. Filing 102 (Text Minute Entry); Filing 103. The parties then filed numerous pretrial motions. Nolde filed six separate motions to dismiss the indictments, a motion in limine seeking to exclude evidence of customer-victims not identified in the indictments, a motion for protective relief alleging that the Government engaged in vindictive prosecution during the plea negotiation process, and a motion to compel disclosure of discovery. Filing 104 (Motion to Dismiss); Filing 112 (Motion to Dismiss); Filing 120 (Motion to Dismiss); Filing 122 (Motion to Dismiss); Filing 124 (Motion to Dismiss); Filing 126 (Motion to Dismiss); Filing 139 (Motion in Limine); Filing 153 (Motion for Protective Relief); Filing 172 (Motion to Compel Disclosure). The

---

[1] The Court has addressed the procedural background of this case in detail in a prior order. *See* Filing 164 at 5–10.

Government filed a motion in limine seeking to preclude Nolde from offering evidence or argument of five different topics at trial, a motion notifying the Court of a potential conflict with Nolde's attorney and asking the Court to investigate that potential conflict, and a motion to strike the reply brief that Nolde filed in support of his motion to compel disclosure of discovery. Filing 137 (Motion in Limine); Filing 148 (Notice and Motion for Investigation into Potential Attorney Conflict); Filing 180 (Motion to Strike Reply). The Court held a hearing on the two motions alleging vindictive prosecution and a defense attorney conflict, and the Court entered multiple orders ruling on each of the pretrial motions. Filing 175 (Text Minute Entry); Filing 164; Filing 167; Filing 177; Filing 183.

The matter proceeded to jury trial on January 26, 2026. During the eight-day trial, the Government called more than 35 witnesses, including customers, suppliers, subcontractors, and former employees of BV Builders; employees from the banks and lending institutions that issued construction loans to BV Builders customers; and records custodians from DocuSign and Google. Nolde called eight witnesses, including two of his former attorneys, a BV Builders customer, multiple family members and family friends who also previously worked for BV Builders, and an employee of Jones Bank. The evidence at trial established that customers seeking to build new barndominium- or shouse-style homes hired Nolde's company, BV Builders, to construct the homes. The customers obtained construction loans to finance their projects and paid initial deposits to BV Builders, either as a downpayment separate from the construction loan or as a draw from the loan itself. The construction loans were for hundreds of thousands of dollars, and the loans obtained by the three couples whose projects formed the bases of the three counts of the Superseding Indictment—Justin and Alex Niewohner (Count I), Trent and Brittany Doescher (Count II), and Joseph and Morgan Bartu (Count III)—were each for more than $400,000. Nolde requested draws from the construction loans to pay for specific portions of the projects, such as for footings, concrete,

or framing. Depending on the lending institution's process, the draw requests were either approved by the customers or by a loan officer, and the draws were then issued to Nolde through BV Builders.

Nolde frequently did not use the funds to pay for the items or labor listed in the draw requests. For instance, Brett Gondringer testified that he and his wife paid approximately $82,000 to BV Builders at Nolde's request to "lock in" lumber prices with Idaho Pacific Lumber Company, but an account manager from the lumber company testified that the lumber company never conducted any business with BV Builders. Brittany Doescher testified that she authorized a draw to pay for framing but later received a construction lien from the framing company because the framing company had not been paid for their work on her project. Matthew Lindow testified that five months after he and his wife made deposits to BV Builders and signed a contract with the company that included BV Builders' obligation to obtain permits for their project, no building permits existed. Joseph Bartu testified that he authorized a draw for lumber and even received verbal confirmation from Nolde that lumber had been paid for before the lumber company placed a construction lien on his property. Michele Lucas testified that she paid a deposit specifically to get blueprints for her project but never received building plans that could be certified by an architect.

Subcontractors and suppliers from multiple companies testified that they were not paid for their work on BV Builders projects, in some cases despite assurances from Nolde that payment would be made. Because Nolde and BV Builders did not pay them, many of the subcontractors and suppliers filed construction liens on the customers' projects. As a result, Nolde's customers became responsible for paying off liens that were levied for supplies or labor that the customers had already authorized BV Builders to pay for through draws on their construction loans. These construction liens were filed against BV Builders customers despite Nolde's representations—made in emails with the Niewohners and Bartus and their lending institutions, made in a recorded phone call with

4

Joseph Bartu, made in a sworn statement of payment sent to the Doeschers' lending institution, and made when Nolde signed the checks to receive draws from his customers' loans—that all supplies and labor were paid in full.

At the close of the Government's case in chief, Nolde moved for a judgment of acquittal on all three counts against him. Pursuant to Rule 29(b) of the Federal Rules of Criminal Procedure, the Court reserved its decision on Nolde's motion and proceeded with the trial. After the Government rested its rebuttal case, Nolde renewed his motion for a judgment of acquittal. The Court issued an oral ruling denying Nolde's motion as to Count II, concluding that a reasonable jury could find that the Government had proven beyond a reasonable doubt the four elements[2] of the crime of wire fraud affecting a financial institution for that count. The Court stated its intention to submit the case to the jury and to rule on Nolde's motion as to Counts I and III in a written order at a later time. The jury received the case at approximately 12:10 p.m. on February 4, 2026, the eighth day of trial. After taking about an hour for lunch, the jury began deliberations. At approximately 2:15 p.m. on that same day, the jury notified the Court that they were prepared to return a verdict. The jury's verdict was guilty on all three counts.

Two days after trial ended, the Court entered a written order denying Nolde's oral motion for a judgment of acquittal as to Counts I and III. Filing 208. The Court addressed in detail the four elements of the crime of wire fraud affecting a financial institution and held that there was sufficient evidence for a reasonable jury to find that the Government met its burden to prove each element for

---

[2] The four elements of the crime of wire fraud affecting a financial institution are: (1) the defendant voluntarily and intentionally participated in a scheme to defraud with knowledge of its fraudulent intent; (2) the defendant did so with the intent to defraud; (3) the defendant used or caused to be used an interstate wire communication in furtherance of or in an attempt to carry out some essential step in the scheme; and (4) the scheme affected a financial institution. *See United States v. Burns*, 990 F.3d 622, 627 (8th Cir. 2021); Eighth Circuit Manual of Model Jury Instructions (Criminal) 6.18.1343 (2025).

5

Counts I and III. Nolde then timely filed a Motion for New Trial. Filing 212. In that motion, Nolde seeks a new trial due to four statements or arguments that counsel for the Government made during the rebuttal portion of closing arguments:

> 4. In the rebuttal of closing argument, the Assistant United States Attorney presented part of a bank statement showing Nolde withdrew $85,750.00 in one month from his business bank account and insinuated that instead of paying his subcontractors and suppliers he was paying himself.
>
> 5. He also stated that Nolde took a trip to Jamaica when in fact he did not do so.
>
> 6. Additionally, he called Nolde a liar.
>
> 7. The Assistant United States Attorney also mischaracterized the testimony of Shelby Smith of Google.

Filing 212 at 2. Nolde did not object to any of these instances of alleged prosecutorial misconduct during trial, but he argues in his supporting brief that "[t]he Assistant United States Attorney's misstatements during rebuttal closing argument were material, prejudicial, and deprived Nolde of a fair trial." Filing 213 at 4. He contends that "the interest of justice requires a new trial" because the alleged "misstatements concerned critical issues related to Nolde's intent and credibility" and because they "were made during rebuttal" when "defense counsel had no opportunity to respond to them." Filing 213 at 4. Nolde's motion has been fully briefed and is now ready for review.[3]

## II.  STANDARD OF REVIEW

Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Generally, "[a]

---

[3] Nolde has attached five trial transcripts to his briefs supporting his Motion for New Trial. *See* Filing 213-1; Filing 213-2; Filing 213-3; Filing 220-1; Filing 220-2. In the future, Nolde should refrain from attaching transcripts to any motions or briefs filed with the Court. Because the transcripts have been produced by the Court Reporter, they appear on the docket and are accessible to all parties. As the docket entry for each transcript reflects, the transcripts are subject to redaction deadlines. By attaching unredacted transcripts as exhibits in support of his other filings, Nolde has undermined the redaction process. Should Nolde wish to refer to a transcript in future filings, he should simply cite to the transcript as it appears on the docket. The Government and the Court will be able to access the transcript from the docket and any redactions will remain intact.

defendant's failure to object to an alleged error . . . precludes him from asserting the claimed error in a motion for new trial." *United States v. McBride*, 862 F.2d 1316, 1319 (8th Cir. 1988). The Eighth Circuit Court of Appeals has upheld a district court's application of "the plain error standard" in reviewing a defendant's motion for a new trial based on alleged errors that neither party objected to during trial. *United States v. Amaya*, 731 F.3d 761, 764 (8th Cir. 2013). Because Nolde did not object to any of the statements or arguments that he now claims constitute prosecutorial misconduct, the Court reviews for plain error here. "The plain error rule connotes error that has affected a defendant's substantial rights, resulting in a miscarriage of justice." *McBride*, 862 F.2d at 1319. Under plain error review, the defendant must demonstrate "(1) error, (2) that is plain, and (3) that affects [his] substantial rights." *United States v. Ralston*, 973 F.3d 896, 908 (8th Cir. 2020) (quoting *United States v. Brown*, 702 F.3d 1060, 1065 (8th Cir. 2013)). "Even if these three prongs are satisfied, [the Court] should only exercise [its] discretion to correct plain error if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting same). A defendant's claims will not survive under the plain error standard where the defendant does not "demonstrate a reasonable probability that the outcome would have been different absent the alleged error." *United States v. Lazzaro*, 129 F.4th 514, 531 (8th Cir. 2025) (cleaned up).

### III. LEGAL ANALYSIS

### A.  Nolde's Allegations of Prosecutorial Misconduct

The Court begins by reviewing the four instances of prosecutorial misconduct that Nolde alleges occurred during the Government's rebuttal closing argument. The Court will also address the parties' arguments on each allegation.

7

1.  *The Prosecutor's Use of Exhibit 123 During Rebuttal*

Nolde first alleges that the Government committed prosecutorial misconduct when the prosecutor showed the jury page eight of Exhibit 123 during the Government's rebuttal argument. Filing 213 at 2; Filing 209 at 35. The Government offered Exhibit 123 on the first day of trial, and it was admitted without objection from the defense. Filing 202 at 10. Exhibit 123 is BV Builders' bank statement for May 2023. Page eight of that exhibit contains 18 images, some of which are checks that were cashed from the BV Builders account while others are deposit tickets reflecting money deposited into the BV Builders account. During his rebuttal argument, the prosecutor showed the jury three checks from page eight of Exhibit 123: (1) a check for $36,250.00 written by Amanda Nolde, the defendant's wife and the Chief Financial Officer of BV Builders, to the Nolde Family Investment Group on May 16, 2023; (2) a check for $25,000.00 written by Amanda Nolde to the Nolde Family Investment Group on May 25, 2023; and (3) a check for $24,500.00 written by Amanda Nolde to the Nolde Family Investment Group on May 26, 2023. Filing 209 at 35. After pointing to the three checks, the prosecutor stated:

> That's -- that's over $85,000 that they take out of their BV Builders account and they put into the Nolde Family Investment Group, whatever that is. That happens in May.
>
> Remember what happens in May also? That account ends in the negative. June, it ends in the negative. The business basically falls apart from that point on.
>
> So when he said no secret accounts, ladies and gentlemen, it's right there. We don't have to prove it but that's -- that's what it is. That wasn't an accident. That's not someone trying to pay their bills. That's not someone who's trying to make the customers whole. That's someone who's stealing money.

Filing 209 at 35–36.

Nolde argues that the prosecutor "materially misrepresented the evidence" when he showed the jury the three checks on page eight of Exhibit 123. Filing 213 at 2. Nolde acknowledges that

Exhibit 123 was admitted into evidence during the trial, but he contends that "there was no mention of these withdrawals for personal use at trial." Filing 213 at 2–3. According to Nolde, the prosecutor "painted Nolde as someone who was siphoning money from his business for personal gain, when the evidence showed he was actually putting personal funds into the business to keep it afloat and only removing very small amounts for personal use." Filing 213 at 3. In support of his argument that "he was actually putting personal funds into the business," Nolde asserts that the bank statement "actually shows that Nolde had deposited $85,000 of his personal funds into the business account approximately one week before the[ ] withdrawals" highlighted by the prosecutor, meaning that instead of "withdrawing $85,750 for personal use as the Assistant United States Attorney claimed, Nolde was essentially withdrawing his own funds, with a net withdrawal of only $750." Filing 213 at 3. Nolde concludes that the prosecutor's "misrepresentation" of Exhibit 123 was "particularly prejudicial" because it went to Nolde's intent, "a key element of wire fraud." Filing 213 at 3.

The Government counters that the prosecutor's reference to Exhibit 123 during rebuttal was a direct response to defense counsel's closing argument. Filing 219 at 24. During closing, defense counsel argued that the jury "never saw" evidence of "secret accounts," "luxury spending," "cash withdrawals," "fleeing," "fake invoices," "forged documents," or a "plan." Filing 209 at 20. Defense counsel also contended that there was no evidence of a "secret process," "false identity," or a "hidden account," and that there was no "evidence that the money was requested for one purpose and secretly diverted to another -- or for another." Filing 209 at 21. In its response brief, the Government claims that the prosecutor rebutted defense counsel's line of argument by explaining to the jury that the existence of "hidden accounts" was not an element that the Government had to prove and by arguing that, regardless, Exhibit 123 shows that "a substantial amount of money was being taken out of the BV Builders' Jones Bank account and deposited into the Nolde Family

9

Investment Group Account." [4] Filing 219 at 24. The Government asserts that its rebuttal argument was "true" and "merely pointed the jury to evidence which was admitted at trial." Filing 219 at 25.

In his reply brief, Nolde faults the prosecutor for "zoom[ing] in on the checks" on page eight of Exhibit 123 and "say[ing] nothing about the deposits" that also appeared on that page. Filing 220 at 10. Nolde argues that his counsel "could not object to this manipulation because it was accomplished visually, by controlling the display, not through any objectionable verbal statement." Filing 220 at 10. Further, Nolde asserts, "[a] prosecutor who shows the jury withdrawals while concealing deposits from the same source on the same page has crossed the line from argument into misrepresentation." Filing 220 at 10–11. Nolde argues that "the first time the jury heard anyone call" the May 2023 transactions "'stealing' was during rebuttal, after the record was closed" and the prosecutor "became an unsworn witness" when he "offer[ed] his own interpretation of an exhibit no one had addressed." Filing 220 at 11.

*2. The Prosecutor's Reference to "Trips to Jamaica" During Rebuttal*

Nolde next argues that the Government committed prosecutorial misconduct when the prosecutor "stated during rebuttal that Nolde had traveled to Jamaica, suggesting he was using business funds for personal luxury." Filing 213 at 3. The prosecutor specifically stated the following in his rebuttal argument:

> Mr. -- They also said, hey, there's no hidden accounts. You know, where --
> you know, where'd all this money go basically? Like, are -- are they not taking
> trips to Jamaica like – which I think one of the witnesses mentioned. There is no

---

[4] The Government also argues in its response brief that "the deposit into the business account, followed shortly thereafter by a significant withdrawal, is symptomatic of check-kiting" which "is itself direct evidence of fraud[ ] and [ ] can even constitute bank fraud on its own in violation of 18 U.S.C. § 1344." Filing 219 at 26–27. Nolde takes issue with the Government's reference to check-kiting and accuses the Government of "attempt[ing] to pivot to a new post trial check-kiting theory." Filing 220 at 11. The Court believes that both parties' talk of check-kiting extends beyond the bounds of meaningful argument on this issue, and the Court finds no need to consider whether the evidence at trial was "symptomatic of check-kiting." As the Court explains in Section III.C. below, Nolde's allegation of prosecutorial misconduct based on the prosecutor's use of Exhibit 123 is denied on other grounds.

required -- we don't have to prove that there are no hidden accounts. That's not an element.

Filing 209 at 35. Nolde argues in his Motion for New Trial that the prosecutor's statement "had no basis in the trial record" because "[t]he evidence at trial, specifically the testimony of Caitlin Dalton (Nolde's sister-in-law), established that she and her husband traveled to Jamaica, not Nolde." Filing 213 at 3. Nolde contends that "[t]his false statement was prejudicial because it reinforced the Assistant United States Attorney's narrative that Nolde was using business funds for personal luxury rather than paying subcontractors and suppliers." Filing 213 at 3.

In response, the Government explains that "Caitlin Dalton testified that she started working for BV Builders of June of 2023 after a trip to Jamaica" and that the Government's "recollection was that Dalton was saying Nolde had been to Jamaica." Filing 219 at 28. The Government argues that even if Dalton went to Jamaica, not Nolde, the prosecutor's statement during rebuttal "would be one misstatement, which falls far short of creating a cumulative effect of establishing plain error and a miscarriage of justice." Filing 219 at 28.

3. *The Prosecutor's Rebuttal Argument that Nolde "Told Lie After Lie After Lie"*

Nolde also alleges that the prosecutor "called Nolde a liar" during the Government's rebuttal closing argument and that this constituted prosecutorial misconduct. Filing 212 at 1. Although Nolde references the prosecutor's "blanket characterization of defendant's statements as lies," Nolde appears to take particular issue with the following statements made during the Government's rebuttal argument:

> A lot of what the defense is bringing up were basically requests that you might believe things that he said to other people and basically saying, hey, this proves it. Like, hey, he told this guy he was, you know, working with hydraulic fluid, he was trying to do this, and he was trying to do that. Ladies and gentlemen, those are all statements from Bryce Nolde brought in through other people; and

11

> we've heard through this trial from witness after witness about lie after lie after lie that Bryce Nolde told. Those statements are worth nothing.
>
> * * *
>
> A lot of what the defense pointed to is basically asking you to believe statements that -- of Bryce Nolde that came in but remember what -- everything else you heard from all the witnesses. Bryce Nolde told lie after lie after lie as he tried to shift blame to anybody but himself.

Filing 209 at 36–37, 41. According to Nolde, the prosecutor's "characterization" of the defendant "went beyond fair comment on the evidence and improperly asked the jury to infer Nolde's intent to lie based upon prior statements he made." Filing 213 at 4.

The Government responds that "[a] significant amount of the evidence Nolde sought to admit at trial were [sic] his own self-serving out of court statements." Filing 219 at 28. However, the Government contends, Nolde "told a multitude of lies" that "directly undercut his credibility, and undermined his own self-serving out of court statements." Filing 219 at 29. The Government then cites evidence from trial, including witness testimony and exhibits, as the basis for 14 "lies" the Government asserts Nolde told. Filing 219 at 29–33. The Government argues that the prosecutor's "statement during closing argument that Nolde had repeatedly lied was a truthful statement which is well supported by the evidence." Filing 219 at 33. Nolde counters that the 14 "lies" identified by the Government were "introduced through third-party witnesses testifying about things Nolde allegedly said outside of court or by emails or texts of Nolde" and that those statements "were disputed, and many were directly contradicted by impeachment evidence."[5] Filing 220 at 14. Nolde avers that "[a] defendant who exercises his Fifth Amendment right not to testify cannot have his

---

[5] The Court assumes defense counsel is aware of the law so perhaps the Court speaks directly to the defendant when it notes that "a challenge to credibility"—*i.e.*, impeachment—"does not affect admissibility of testimony" that is otherwise properly admitted under the Federal Rules of Evidence, *United States v. Pendleton*, 894 F.3d 978, 980 (8th Cir. 2018), and an out of court statement "offered against an opposing party" is not hearsay, Fed. R. Evid. 801(d)(2). Also, properly admitted "verbal testimony only" is no less evidence than "documentary evidence." Filing 220 at 16.

'credibility' destroyed by the government's interpretation of disputed hearsay or of his characterization of emails or texts." Filing 220 at 14.

    4.   *The Prosecutor's Characterization of Shelby Smith's Testimony During Rebuttal*

Finally, Nolde alleges that the Government committed prosecutorial misconduct based on the prosecutor's characterization of Shelby Smith's testimony. Filing 213 at 4. Smith is a policy specialist on Google's legal investigations team who testified during the Government's case in chief as a records custodian for Google. Filing 198. Smith's testimony was the subject of many on-the-record discussions during trial, and it was addressed at length in the Court's order on Nolde's oral motion for judgment of acquittal on Counts I and III. Filing 208. The discussions about Smith's testimony turned on whether she was able to testify that emails sent through Google's Gmail system crossed state lines, even though both the sender and the recipients were in the state of Nebraska. This issue went directly to one of the elements that the Government had to prove—that Nolde used or caused to be used an interstate wire communication in furtherance of or in an attempt to carry out some essential step in the scheme to defraud—and it specifically related to Counts I and III of the Superseding Indictment, both of which alleged that Nolde sent Gmail emails to customers requesting approval for draws on their construction loans. *See* 18 U.S.C. § 1343; Filing 98 at 5.

At trial, Smith testified that Google received a subpoena from the Government asking whether there were "any servers which handled Gmail email traffic" located in the state of Nebraska on the dates relevant to Counts I and III. Filing 198 at 3–4. Smith testified that a search revealed that there were no Gmail servers in Nebraska on those dates. Filing 198 at 4. The prosecutor concluded his direct examination of Smith with a series of questions about "basic Gmail traffic," inquiring whether Smith was familiar with the path an email takes once it has been sent through Gmail. Filing 198 at 5–6. Over multiple objections from defense counsel, Smith ultimately testified

that "[b]ased on [her] understanding," she "believe[d]" that an email sent through Gmail "would have to travel out of the state." Filing 198 at 6. On cross examination, defense counsel elicited testimony that Smith herself did not complete the search of Google's Gmail server records but instead relied on the work of her team to do the analysis. Filing 198 at 9. Defense counsel asked Smith, "Your testimony does not necessarily established -- establish that Google data necessarily crossed state lines," to which Smith responded, "I -- I don't believe so, no." Filing 198 at 10. When asked by defense counsel whether she was "aware that Google has a data center in Papillion, Nebraska," Smith testified that she was "not aware." Filing 198 at 11.

On redirect examination, the prosecutor inquired into the difference between a data center and a Gmail server. Filing 198 at 12. Smith responded that she did not "know the difference between a data center and a server" but that she did "know that typically the server locations that we are looking at are in terms of Gmail servers." Filing 198 at 13. Smith confirmed that Google "did not have any Gmail servers located in the state of Nebraska for the time frame specified." Filing 198 at 13. After a sidebar with counsel for both parties, the Court permitted defense counsel to re-cross examine Smith and the Government to re-redirect examine her. The final question of the Government's re-redirect examination was, "And let's just back up and just take a big picture view of this just real basic. If I have a Gmail account and I send an email through my -- from -- like to or from Gmail, does it have to go through the Gmail servers?" Filing 198 at 21. Smith responded, "I don't know." Filing 198 at 21.

Nolde seeks a new trial based on the prosecutor's alleged "mischaracterization" of Smith's testimony during the Government's rebuttal closing argument. Filing 212 at 1. Defense counsel argued in closing that the Government had not met its burden to prove "that there is jurisdiction"

because Smith "couldn't even say she knew if the Gmail -- you know, if they had to even go on Gmail servers." Filing 209 at 26–27. The prosecutor then made the following argument in rebuttal:

> They talked about the -- Google, the Google testimony. And he did the same thing in closing that he did during cross-examination. I asked about Gmail servers. He says Google data centers, all right? The Google data centers are not the question. The question is Gmail. Were Gmail servers -- Did emails have to go through Gmail servers?
>
> And on direct examination it basically says: So for a Google email -- for a person to send or receive an email from a Gmail -- basically from a Gmail account for a Gmail traffic, it has to go through the Gmail servers; is that right?
>
> Answer: I believe so, yes.
>
> He tried to confuse you, he tried to confuse the witness by saying, well, hey, there's a data center over there. It's got the name Google on it. That must be the same thing. It's not the same thing. They have servers dedicated to -- to Gmail email traffic. There are none in Nebraska. The fact that there are no Gmail servers in Nebraska is testimony that was uncontroverted and those emails are going through the Gmail accounts.

Filing 209 at 39–40. Nolde argues that contrary to the prosecutor's representation of Smith's testimony during rebuttal, it actually was controverted whether or not there are Gmail servers in Nebraska. Filing 213 at 4. In support of this argument, Nolde points to Smith's testimony that she did not personally perform the search for Gmail servers, and he points to Smith's answer of "I don't know" when she was "directly asked by the Assistant United States Attorney if an email sent through Gmail would have to go through Gmail servers." Filing 213 at 4. Nolde contends that "[t]he Assistant United States Attorney's characterization of this testimony as 'uncontroverted' was not uncontroverted as [Smith's] answer above shows she does not know if gmail has to be transmitted across gmail servers." Filing 213 at 4. According to Nolde, the prosecutor's rebuttal statements about Smith's testimony "mislead [sic] the jury as to the Government's proof or lack thereof of the in interstate commerce element of wire fraud." Filing 213 at 4.

15

The Government responds that the prosecutor's "statement during closing that it was uncontroverted that there were no Gmail servers in Nebraska was true." Filing 219 at 34. Citing the transcript of Smith's trial testimony, the Government argues that "Nolde never asked Smith about the location of specifically Gmail servers," but "[t]he government did repeatedly" and each time she testified that there were no Gmail servers located in Nebraska during the relevant times. Filing 219 at 34.

### B. Applicable Standards

"To obtain a new trial on the basis of improper statements by the prosecutor during trial, [a defendant] 'must show that (1) the prosecutor's remarks were improper, and (2) such remarks prejudiced [his] rights in obtaining a fair trial.'" *United States v. McBaine*, 999 F.3d 1131, 1133 (8th Cir. 2021) (quoting *United States v. Crumley*, 528 F.3d 1053, 1064 (8th Cir. 2008)). Put differently, "[a] prosecutor's conduct or remarks warrant a new trial if (1) the 'conduct or remarks were improper,' and (2) the 'conduct or remarks prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial.'" *United States v. Spencer*, 998 F.3d 813, 819–20 (8th Cir. 2021) (quoting *United States v. Alaboudi*, 786 F.3d 1136, 1141 (8th Cir. 2015)). "In assessing prejudice, 'we look to: (1) the cumulative effect of the improprieties; (2) the strength of the evidence against the defendant; and (3) the district court's curative action, if any.'" *United States v. Cameron*, 99 F.4th 432, 437 (8th Cir. 2024) (quoting *United States v. Patterson*, 68 F.4th 402, 419 (8th Cir. 2023)).

Even when a prosecutor's remarks "present[ ] a close question related to propriety," the prosecutor's remarks are not grounds for a new trial when "there is no reasonable probability that [the defendant] would have been acquitted without the statements." *United States v. Truax*, 64 F.4th 963, 968 (8th Cir. 2023) ("Given the overwhelming evidence against Truax, he cannot show the

16

remarks were clearly injurious, or that prejudice resulted."); *see also Cameron*, 99 F.4th at 437 ("Even assuming the Government's remarks were improper, the remarks did not prejudice Cameron's right to a fair trial in light of the ample evidence of Cameron's guilt."); *McBaine*, 999 F.3d at 1133 ("Even assuming the prosecutor's remarks were improper, however, we cannot say that they prejudiced [McBaine's] rights in obtaining a fair trial." (alteration in original) (internal quotation marks and citation omitted)); *United States v. Foreman*, 588 F.3d 1159, 1164 (8th Cir. 2009) ("Even assuming, without deciding, that the Government's questions were plainly improper, the errors were not so prejudicial as to affect the outcome of the trial."); *Spencer*, 998 F.3d at 820 ("Because we rest this conclusion [that the defendants' prosecutorial-misconduct claim fails] on the fact that the defendants fail to establish a reasonable probability that the allegedly improper argument affected the outcome of the trial, we do not reach the question whether the argument was improper." (internal citation omitted)).

### C. Nolde is Not Entitled to a New Trial on the Basis of Prosecutorial Misconduct

#### 1. *The Court Doubts that Any of the Alleged Conduct was Improper*

The Court does not find plain error in the Government's rebuttal closing argument. At the outset, the Court strongly doubts that any of the prosecutor's challenged conduct or remarks were improper, as Nolde suggests. Regarding the prosecutor's use of Exhibit 123 during rebuttal, Nolde has provided no authority for his claim that "[a] prosecutor who shows the jury withdrawals while concealing deposits from the same source on the same page has crossed the line from argument into misrepresentation."[6] Filing 220 at 10–11. Rather, the law is clear that "[i]n rebuttal [ ] the

---

[6] The case Nolde does cite to support this claim, *United States v. Beeks*, 224 F.3d 741 (8th Cir. 2000), is inapposite. In *Beeks*, the Eighth Circuit found that a prosecutor engaged in improper conduct when he "attempted to obtain the effect of impeachment even though [the defendant] did not testify." 224 F.3d at 746. In that case, the defense called the

prosecution may give a 'fair response' to the defense's attack on the government's case, *United States v. Flynn*, 196 F.3d 927, 930 (8th Cir. 1999), and 'the prosecution is entitled to address whether a particular defense explanation of the evidence raises a reasonable doubt.' *United States v. Kidd*, 963 F.3d 742, 752 (8th Cir. 2020)." *United States v. Hernandez*, 999 F.3d 1181, 1183–84 (8th Cir. 2021). During his closing argument, defense counsel argued repeatedly that "[t]here was no hidden account." Filing 209 at 21. The prosecutor fairly responded to that argument by emphasizing that the Government did not have to prove the existence of a "hidden account" and by referring the jury to a specific page of an exhibit admitted into evidence without objection. This conduct was not improper, nor was it improper for the prosecutor to argue that "Bryce Nolde told lie after lie after lie." Filing 209 at 41. "It is permissible for a prosecutor to interpret the evidence as indicating that the defendant is not telling the truth," and as "long as prosecutors do not stray from the evidence and the reasonable inferences that may be drawn from it, they, no less than defense counsel, are free to use colorful and forceful language in their arguments to the jury." *Cameron*, 99 F.4th at 437 (internal quotation marks and citation omitted). The evidence at trial supported the prosecutor's characterization of Nolde's statements as "lies," as multiple witnesses—subcontractors, suppliers, and customers of BV Builders—testified that Nolde promised them something—payment, permits,

---

defendant's former employer to testify about the defendant's dates of employment and the nature of his position. *Id.* at 743. On cross examination, the prosecutor asked the witness multiple questions about the job application that appeared in the defendant's employment file, ultimately attempting to have the witness read aloud the defendant's answer to a question about whether the defendant had been previously convicted of a felony. *Id.* at 744. The district court sustained defense counsel's objection to the prosecutor's tactic before the witness could read aloud the defendant's answer to the felony question. *Id.* The district court later instructed the jury that the witness would have read the answer "no." *Id.* The Eighth Circuit determined that the prosecutor's conduct was improper, especially because the district court had issued a pretrial ruling that the prosecutor should not attempt to impeach the defendant with a prior conviction without permission. *Id.* at 742, 746.

The Court can see little connection between the facts in *Beeks* and Nolde's allegation that the prosecutor engaged in improper conduct when he showed the jury a portion of Exhibit 123 during rebuttal. Exhibit 123 was admitted into evidence without objection from Nolde, and it was used not to "impugn [Nolde's] credibility and to improperly convey to the jury that [Nolde] had some past criminal involvement" but to respond to defense counsel's argument in closing that the Government had shown no evidence of hidden accounts. *Beeks*, 224 F.3d at 746.

or certain building progress—and then failed to follow through. The Court cannot find that the prosecutor "stray[ed] from the evidence and the reasonable inferences that may be drawn from it" when he interpreted this evidence as indicating that Nolde had not told the truth. *Cameron*, 99 F.4th at 437.

It also was not improper for the prosecutor to refer to Shelby Smith's testimony and to argue that "[t]he fact that there are no Gmail servers in Nebraska is testimony that was uncontroverted." Filing 209 at 40. Defense counsel addressed Smith's testimony in his closing argument, contending that Smith "said on direct examination that we just did a Google search for whether there were Gmail-configured servers in Nebraska, and there were none" but that she testified on cross-examination that she "did not know" if there were "any data centers in Nebraska." Filing 209 at 25–26. It was a "fair response" for the Government to counter defense counsel's characterization of Smith's testimony by "comment[ing] on its interpretation of evidence." *Flynn*, 196 F.3d at 930; *United States v. Overton*, 971 F.3d 756, 768 (8th Cir. 2020). Moreover, the Court does not believe the prosecutor "stray[ed] from the evidence and the reasonable inferences that may be drawn from it" when he argued that it was uncontroverted that there were no Gmail servers in Nebraska because Smith consistently *did* testify that there were no Gmail servers in Nebraska, even though she wavered when asked whether there was a Google data center in Nebraska or whether an email must travel through Gmail servers. *Overton*, 971 F.3d at 768 (alteration in original) (internal quotation marks omitted) (quoting *United States v. Robinson*, 110 F.3d 1320, 1327 (8th Cir. 1997)).

The only allegation in Nolde's Motion for New Trial that potentially has teeth is his argument that the prosecutor "stated that Nolde took a trip to Jamaica when in fact he did not do so," but the Court doubts that even this remark was improper. Filing 212 at 1. The Court's recollection of the evidence is that defense witness Caitlin Dalton testified that *she* took a trip to

Jamaica before she started working for BV Builders. The prosecutor referenced "trips to Jamaica" in his rebuttal argument, but he did so ambiguously, arguing "are they not taking trips to Jamaica like -- which I think one of the witnesses mentioned." Filing 209 at 35. Nolde has construed the prosecutor's comment personally, but the Eighth Circuit has cautioned that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *United States v. Dunn*, 723 F.3d 919, 933 (8th Cir. 2013). Thus, the Court is reluctant to infer that the prosecutor intended his Jamaica statement to have its most damaging meaning. Regardless of whether the prosecutor's Jamaica statement "improperly stray[ed] from the evidence and the reasonable inferences that may be drawn from it," the statement did not prejudice Nolde, as the Court explains below, and it is therefore not a basis for a new trial. *Overton*, 971 F.3d at 768 (alteration in original) (internal quotation marks and citation omitted).

2. *Even if the Prosecutor Did Engage in Improper Conduct, Nolde Has Not Shown that He was Prejudiced*

Even assuming that the prosecutor did engage in improper conduct or make improper remarks in his rebuttal closing argument as Nolde alleges, "the errors were not so prejudicial as to affect the outcome of the trial." *Foreman*, 588 F.3d at 1164 ("Factors to consider in assessing prejudice include the cumulative effect of any misconduct, the strength of the properly admitted evidence, and any curative actions taken by the trial court."). First, the cumulative effect of the alleged misconduct was minimal and did not deny Nolde a fair trial. Taken in the context of an eight-day trial, the prosecutor's challenged remarks "were an isolated event, occurring during rebuttal closing arguments, and there is nothing to suggest that there was a cumulative detrimental effect." *United States v. O'Dell*, 204 F.3d 829, 835 (8th Cir. 2000); *see also United States v.*

*Samples*, 456 F.3d 875, 883 (8th Cir. 2006) ("The cumulative effect of the remarks was minimal because they were confined to a few sentences of the prosecutor's rebuttal and were neither pronounced nor persistent."). The prosecutor's conduct also did not invite "the jury to reach its verdict on an improper basis." *Samples*, 456 F.3d at 883. Instead, the prosecutor's reference to Exhibit 123 and to testimony already in evidence encouraged the jury to assess "the credibility of witnesses" and "the weight to be given their testimony," which are tasks "uniquely within the province of the trier of fact." *United States v. Cannon*, 160 F.4th 911, 917 (8th Cir. 2025) (internal quotation marks and citations omitted).

Second, as the Court has recounted in Section I. above, in its oral rulings at trial, and in its order on Nolde's oral motion for a judgment of acquittal, Filing 208, "the evidence of [Nolde's] guilt was overwhelming." *Foreman*, 588 F.3d at 1165. Over the course of eight days, the Government "presented a wealth of evidence at trial," including the testimony of nearly a dozen former customers of BV Builders,[7] as well as testimony from subcontractors and suppliers who worked for BV Builders, employees of various financial institutions, and records custodians of the services used to transmit the relevant communications in this case. *Lazzaro*, 129 F.4th at 531. These witnesses testified that Nolde did little or no work on the construction projects his company had been hired to complete, that Nolde received draws from his customers' construction loans and then did not use the money in the ways he represented he would, that Nolde did not pay subcontractors and suppliers for the work they were hired to do, and that the subcontractors and suppliers had to place construction liens on the BV Builders projects to ensure payment. The Government also

---

[7] The Government's case in chief included testimony from eight witnesses representing seven couples who had hired BV Builders. The Government called three more former BV Builders customers in its rebuttal case. Nolde's case included the testimony of two witnesses from an additional BV Builders project. In sum, the jury heard 13 witnesses testify about 11 BV Builders projects.

21

produced evidence of lien waivers signed by Nolde on the checks he received from his customers' construction loans, a sworn statement sent via DocuSign and emails sent via Gmail by Nolde to his customers confirming that all costs were paid, and construction liens filed against Nolde's customers. Together, this is "ample evidence" of Nolde's guilt. *Cameron*, 99 F.4th at 437. Even if the prosecutor did engage in improper conduct during his rebuttal closing argument, "there is no reasonable probability that [Nolde] would have been acquitted without" that conduct given the overwhelming amount of properly admitted evidence against Nolde. *Truax*, 64 F.4th at 968.

Third, although Nolde did not object to any of the rebuttal remarks he now alleges are grounds for a new trial, the Court's instructions to the jury sufficiently cured any harm caused by the challenged conduct. At the beginning of trial, the Court instructed the jury that Nolde "is presumed innocent unless and until proved guilty beyond a reasonable doubt," and the Court further instructed the jury at the close of evidence that "[t]he presumption of innocence alone is sufficient to find the defendant not guilty and can be overcome only if the government proved during the trial, beyond a reasonable doubt, each element of the crimes charged." Filing 203 at 1, 15. *See McBaine*, 999 F.3d at 1134 (determining that the defendant was not prejudiced in part because "at the outset of trial the district court instructed the jury that it must presume McBaine was 'innocent, unless and until proved beyond a reasonable doubt,' and that 'the prosecution must prove beyond a reasonable doubt [the elements of the charge] to make its case'" (alteration in original)). The Court also instructed the jury both before and after the presentation of evidence that "[s]tatements, arguments, questions and comments by lawyers representing the parties are not evidence," while "the testimony of witnesses, the documents, and other things received as exhibits" are evidence. Filing 203 at 2, 12. *See Alaboudi*, 786 F.3d at 1145 (concluding that the defendant did not show that he was

prejudiced in part because "[t]he district court instructed the jury that statements by the attorneys were not evidence and it should base its decision on the evidence presented at trial").

Having considered "the cumulative effect of any misconduct, the strength of the properly admitted evidence, and any curative actions taken by the trial court," the Court cannot find that Nolde was prejudiced by the prosecutor's conduct and remarks during rebuttal even if the Court were to assume the prosecutor's conduct and remarks were improper. *Alaboudi*, 786 F.3d at 1141. Given the substantial evidence against Nolde, the "result at trial would not have been different" absent the challenged conduct, and there was no plain error in the Government's rebuttal closing argument. *Lazzaro*, 129 F.4th at 531. Nolde's Motion for New Trial is therefore denied.

### D.  Nolde's Reply Brief

The Court concludes with a discussion of Nolde's reply brief. Filing 220. In his reply brief, Nolde alleges for the first time that the prosecutor engaged in prosecutorial misconduct when, in the Government's rebuttal closing argument, the prosecutor "dismiss[ed] [ ] the bank's admitted unauthorized use of Nolde's signature as 'so what, who cares.'" Filing 220 at 12 (reduced from capitals). Nolde also contends for the first time that "[Shelby] Smith's testimony failed to establish the emails crossed state lines" and that "the evidence was insufficient" to support Nolde's conviction on Counts I and III. Filing 220 at 7, 9 (reduced from capitals). Nolde did not raise either of these arguments in his Motion for New Trial, Filing 212, or his supporting brief, Filing 213, and it is not appropriate for Nolde to assert these arguments for the first time in his reply brief. As a rule, courts "generally do not consider new arguments raised in a reply brief." *United States v. Morris*, 723 F.3d 934, 942 (8th Cir. 2013) (internal quotation marks omitted) (quoting *United States v. Vincent*, 167 F.3d 428, 431 (8th Cir. 1999)). Nolde has presented no reason why his case warrants an exception to this rule, and the Court denies both of his newly asserted arguments because they were not

23

properly or timely raised.[8] Furthermore, the Court would deny both arguments on the merits had

they been properly asserted.

The Court begins with Nolde's new allegation of prosecutorial misconduct. Nolde takes

issue with the following statement made by the prosecutor during rebuttal:

> You heard them talk about, well, hey, the bank copied and pasted Bryce Nolde's
> signature. So what? Who cares? That was an internal bank document. That --
> those documents are from draw requests. Draw requests that originated from
> Bryce Nolde saying, hey, give me money for these Pella windows, give me
> money to pay Rafa Roofing, give me money to -- to pay these subcontractors,
> and then he pockets the money and doesn't pay these people. Bryce Nolde caused
> -- caused that fraud.

Filing 209 at 40. The prosecutor made this rebuttal statement in response to defense counsel's

closing argument regarding the testimony of Government witness Terrence Seawall, a First

Community Bank employee who processed Nolde's draw requests on the Niewohners' construction

loan. Specifically, defense counsel argued in closing that Seawall "admitted on the record that --

that -- that he basically took my client's signature from a first – a different document and basically

used his signature on every document thereafter." Filing 209 at 30. Defense counsel contended that

"the banker, after taking my client's signature without his consent on every draw request, he sent a

document over to the title company to request payment," meaning Nolde "never made any -- you

know, it talks about making mis - -- a misrepresentation." Filing 209 at 30.

Even if Nolde had properly argued that the prosecutor's "So what? Who cares?" statement

constituted prosecutorial misconduct, the Court would reject that argument for lack of prejudice.

The cumulative effect of the prosecutor's challenged conduct during rebuttal remains minimal even

---

[8] This is not the first time Nolde has attempted to assert new arguments in a reply brief. In an order addressing the Motion to Compel Disclosure filed by Nolde on the eve of trial, the Court struck Nolde's reply brief on the grounds that the reply brief "raise[d] new legal arguments not previously addressed in the motion or supporting brief, provide[d] facts not previously included in the motion or supporting brief, contain[ed] exhibits not previously attached to the motion or supporting brief, and even [sought] relief not previously sought in the motion or supporting brief." Filing 183 at 10.

when the "So what? Who cares?" statement is factored in, and there is still "overwhelming evidence against" Nolde such that "he cannot show the remarks were clearly injurious, or that prejudice resulted." *Truax*, 64 F.4th at 968. In other words, the "So what? Who cares?" "remark[ ] did not prejudice [Nolde's] right to a fair trial in light of the ample evidence of [his] guilt." *Cameron*, 99 F.4th at 437.

The Court turns to Nolde's allegation that Shelby Smith's testimony was insufficient. Nolde's Motion for New Trial and supporting brief focused on the prosecutor's characterization of Smith's testimony; neither document challenged the sufficiency of Smith's testimony. *See generally* Filing 212; Filing 213. Now, in his reply brief, Nolde asserts for the first time that Smith's testimony was insufficient to support a finding of guilt on Counts I and III, and he asks the Court to "grant a new trial on Counts I and III, or in the alternative, enter a judgment of acquittal consistent with [*United States v.*] *Miller*[, Crim. Nos. 20-232 (JRT/DTS), 2024 WL 2218446, at *3 (D. Minn. May 15, 2024)]." Filing 220 at 9. Apart from being improperly raised, this allegation is without merit. For one, the Court has already considered Nolde's motion for a judgment of acquittal on all counts of conviction, and the Court issued a lengthy order specifically addressing Counts I and III. Filing 208. In that order, the Court explained that it was denying Nolde's motion for a judgment of acquittal to the extent the motion was made pursuant to Rule 29(b) of the Federal Rules of Criminal Procedure and to the extent the motion was made pursuant to Rule 29(c). Filing 208 at 3. Without "pass[ing] upon the credibility of witnesses or the weight to be given their testimony," *Cannon*, 160 F.4th at 917 (internal quotation marks and citation omitted), the Court found that there was sufficient evidence for a reasonable jury to conclude that the Government had proved each element of the charged crimes beyond a reasonable doubt. Filing 208. The Court identified that evidence in its written order on Counts I and III and in its oral ruling on Count II. *See generally* Filing 208; *see*

*also* Filing 201 (Text Minute Entry). Because the Court has already ruled on Nolde's motions for a judgment of acquittal, the Court would not "enter a judgment of acquittal" as Nolde requests in his reply brief even if that request were properly before the Court.

Similarly, the Court would not "grant a new trial on Counts I and III" based on Nolde's sufficiency challenge even if Nolde had properly raised that challenge. "A motion for new trial based on sufficiency of evidence is disfavored," and a court can only "grant a motion for a new trial 'where the evidence presented weighs heavily enough against the verdict that the court believes a miscarriage of justice may have occurred.'" *United States v. Davenport*, 910 F.3d 1076, 1080 (8th Cir. 2018) (quoting *United States v. Davis*, 534 F.3d 903, 912 (8th Cir. 2008)). Unlike with a motion for a judgment of acquittal, a court considering a motion for new trial "can weigh the evidence, disbelieve witnesses, and grant a new trial even when there is substantial evidence to sustain a verdict." *United States v. Lander*, 144 F.4th 1058, 1065 (8th Cir. 2025). Even with broader authority at the motion for new trial stage, the Court would deny Nolde's challenge to the sufficiency of the evidence. Having presided over the eight-day trial in this matter and having recounted the evidence at length in this order and in the Court's prior order at Filing 208, the Court cannot find that the evidence "preponderate[s] heavily against the verdict" on any count "such that it would be a miscarriage of justice to let the verdict stand." *United States v. Bertling*, 510 F.3d 804, 808 (8th Cir. 2007) (internal quotation marks and citation omitted).

Rather, the same evidence that supported the Court's conclusion that Nolde is not entitled to a judgment of acquittal on any of the counts—including the testimony of former BV Builders customers, subcontractors, and suppliers; the testimony of employees of financial institutions; the testimony of records custodians from Google and DocuSign; and the evidence of construction liens and both written and oral lien waivers—also supports the Court's conclusion that Nolde is not

26

entitled to a new trial. The Court has weighed the evidence and assessed the credibility of the witnesses, including Shelby Smith, and the Court finds that the evidence "is not so strongly in favor of acquittal that the jury's verdicts may have been a miscarriage of justice." *United States v. Dowty*, 964 F.3d 703, 708 (8th Cir. 2020). Thus, even if Nolde had properly asserted the sufficiency of the evidence as a basis for a new trial, the Court would reject that argument.

## IV. CONCLUSION

For the reasons stated above, Nolde's Motion for New Trial is denied. Nolde challenges the prosecutor's conduct and remarks during the Government's rebuttal closing argument, but "there is no reasonable probability that [Nolde] would have been acquitted without the statements." *Truax*, 64 F.4th at 968. Nolde has therefore failed to show that he was prejudiced by the challenged conduct. As a result, he is not entitled to a new trial on prosecutorial misconduct grounds. Nolde is also not entitled to a new trial on grounds raised for the first time in his reply brief. Accordingly,

IT IS ORDERED that defendant Bryce A. Nolde's Motion for New Trial, Filing 212, is denied.

Dated this 30th day of April, 2026.

BY THE COURT:

Brian C. Buescher
United States District Judge